United States Court of Appeals,

Eleventh Circuit.

No. 95-9418.

In re T2 MEDICAL, INC. SHAREHOLDER LITIGATION.

Kenneth and Laura BENDER, Hal Bloomberg, Arnold Brustin, Jonathan Burstein, Margaret C. Carnett, et al., Plaintiffs-Appellants,

v.

Joseph C. ALLEGRA, T2 Medical, Inc., David Hersh, J. Lee Ledbetter, Defendants-Appellees,

David Sachs, Objector, pro se;  Richard A. Lawrence;  Coram Healthcare Corporation, Movants.

Dec. 8, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (NO. 1:94-CV-744-RLV) Robert L. Vining, Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY[*], Senior Circuit Judge.

HATCHETT, Chief Judge:

Appellants, class members of a federal securities lawsuit that concluded in a settlement, moved, after final judgment had been entered, "to enforce" the settlement agreement, asserting state-law claims against appellees for alleged misconduct occurring during the period of the settlement negotiations.  The district court, finding that appellants' motion constituted a contractually-prohibited attempt to modify the settlement agreement, held that it had "no authority or jurisdiction" to entertain it.  We affirm.

BACKGROUND

On August 24, 1994, the district court in the Northern District of Georgia certified a class

[*]Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

of persons (appellants) who purchased T$^2$ Medical, Inc. (T$^2$) common stock from December 2, 1991, through August 12, 1993, and "suffered damages as a result thereof."[1]  Less than two months later, the parties executed a memorandum of understanding which memorialized the material terms of a settlement.

In April 1995, the parties filed a stipulation of settlement with the district court.  The stipulation provides that appellants release and discharge all claims against appellees in exchange for $25,000,000 and 2,520,000 warrants to purchase Coram common stock.  The adjusted exercise price of the warrants, calculated pursuant to a formula outlined in paragraph 2.3 of the stipulation, was $22.125.[2]  Paragraph 9.7 of the stipulation states that

> [t]his Stipulation of Settlement ... shall not be subject to limitation, impairment, modification, or termination for any reason ..., including without limitation the following:
>
> > (a) Any judicial ... decision ... of any type which allegedly relates to any of the terms of this settlement or to any issue, claim, allegation or defense which has been or might have been asserted in the Litigation;
> >
> > (b) Any change, whether adverse or positive, in the financial condition, assets, liabilities, business, or any other corporate ... activity of any of the Parties;
> >
> > (c) Any allegedly newly discovered facts, legal issues, events or allegations of any type which allegedly relate to any of the terms of this settlement ...;  or
> >
> > (d) Any other action or conduct of any type which allegedly relates to any of the terms of this settlement....

---

[1]In July 1994, T$^2$ merged with other companies to form appellee Coram Healthcare Corp. (Coram).  The parties agree that for purposes of this lawsuit Coram is the successor in interest to T$^2$. The individual appellees served as officers of T$^2$.

[2]Pursuant to paragraph 2.3, the adjusted exercise price of the warrants was derived from an agreed-upon initial exercise price of $20.25 that was adjusted "based on the average closing price for Coram common stock for the ten business days preceding the date at which the Judgment has become Final."  Pursuant to the stipulation, the judgment became "Final" on Saturday, June 17, 1995, "thirty (30) days after entry of the Judgment," and thus the ten-day adjustment period transpired June 5-9 and 12-16, 1995.  The warrants have a four-year term from their date of issuance.

Paragraph 10.7 of the stipulation provides that the stipulation and its exhibits "constitute the entire agreement among the parties hereto and no representations, warranties or inducements have been made to any party concerning the Stipulation ... other than the representations, warranties and covenants contained and memorialized in such documents."  Paragraph 10.10 of the stipulation reads:  "The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of the Stipulation, and the Settling Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Stipulation."

After conducting a fairness hearing, on May 19, 1995, the district court, in a Final Judgment and Order of Dismissal, approved the "settlement set forth in the Stipulation," and "direct[ed] that it ... be effectuated in accordance with its terms."  The court also wrote:

> Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation and administration of the settlement;  (b) distribution of the Settlement Fund;  (c) determination of any questions or applications for attorneys' fees, costs, interest, and expenses;  (d) determination of any other applications for payments out of the Settlement Fund;  and (e) all parties heretofore [sic] the purpose of enforcing and administering the Stipulation and Exhibits thereto and the Litigation until the Judgment contemplated hereby has become effective and each and every act agreed to be performed by the parties has been performed pursuant to the Stipulation.

Thereafter, the conditions of settlement were fulfilled.[3]

Appellants allege that "[d]uring the pendency of the settlement, Coram made numerous, materially false and misleading announcements to the investing public regarding its business ventures and financial status, which inflated the market price of its common stock."  These announcements related to the following business activity:  In January 1995, Coram announced it would merge with Caremark International;  on April 6, 1995, Coram reported the completion of this

---

[3]Appellees represent, and appellants do not dispute, that "Coram caused $25 million to be transferred to Plaintiffs' escrow agent, and also issued and transferred 2,520,000 warrants convertible to Coram common stock at the negotiated exercise price to Plaintiffs' escrow agent."

acquisition; and on April 18, 1995, Coram announced a merger agreement with Lincare. According to appellants,

> [i]n early June of 1995, Coram learned that its analysis regarding the value of the consummated Caremark merger was grossly erroneous. As a consequence of this discovery, the pending merger with Lincare was terminated. However, these facts were not disclosed to the plaintiffs or the investing public until late July and early August. Thus, at the very time that plaintiffs and defense counsel were determining the exercise price of the Warrants under the terms of the Stipulation, the defendants knew that the value of the Coram stock (which was used to establish th[e] exercise price ... ) was grossly inflated.
>
> ....
>
> Had the plaintiffs and the investing public known of the materially adverse information concealed by Coram, the average market price of Coram common stock during the Adjustment Period would have been approximately $5.25 per share, resulting in an Adjusted Exercise Price of approximately $6.30 per share. Instead, on August 11, 1995, the truth surrounding Coram's financial condition was revealed, and the price of Coram common stock fell dramatically, virtually destroying the value of the Warrants and revealing Coram's breach of its obligations under the Stipulation.

Appellants' Br. at 6-8.[4]

On August 29, 1995, appellants filed a Motion to Enforce Stipulation of Settlement (motion to enforce), alleging, without any accompanying evidentiary support:  (1) breach of the covenant of good faith and fair dealing under Georgia law;  (2) appellees' commission of fraud upon the court; and (3) the doctrine of mutual mistake of fact under Georgia law.  Appellants requested the following relief:

> [P]laintiffs move this Court to declare that Coram is in breach of the Stipulation and award the plaintiffs the appropriate measure of damages reflecting the difference in value between 2,520,000 warrants with an exercise price of $20.[25] with Coram at a stock value of $18.50 (the value the day the Settlement Order became Final as defined in the Stipulation) and the same number of warrants in Coram at the same exercise price with Coram at a stock value of $5.25 (the closing price on August 14, 1995, the day following Coram's August 11 announcement).
>
> In the alternative, plaintiffs move this Court for a decree of specific performance of

---

[4]On August 11, 1995, Coram announced a second-quarter loss of $66,300,000.

the terms of the Stipulation entailing the delivery of new warrants with an Adjusted Exercise Price which is calculated using an Effective Price that accurately reflects the true value of Coram during the Adjustment Period.

Finally, in the event that the Court disagrees with the Plaintiffs' assertion that the false reports disseminated by Coram and its agents were the product of a fraudulent scheme to inflate the Adjusted Exercise Price, the law of mutual mistake of fact provides a basis upon which this Court can remedy the destruction of the value of the warrants and effectuate the clear intent of the Stipulation by reforming the Stipulation to provide for an Adjusted Exercise Price which reflects the true value of Coram during the Adjustment Period.

In an Order filed October 12, 1995, the district court denied appellants' motion, holding:

Despite the clear language of Paragraph 9.7, the plaintiffs seek to have this court modify the Stipulation agreed to by the parties.[1]

This court has no authority or jurisdiction to consider the plaintiffs' motion because there is nothing left to "enforce" with respect to the Stipulation. Additionally, the very terms of the Stipulation, as set out in paragraph 9.7, prohibit the plaintiffs from seeking the kind of modification they now desire. The fact that the value of the warrants received by the plaintiffs has decreased provides no basis for this court [to] change the terms agreed upon by the parties after extensive and intensive negotiations by able counsel.

In footnote 1, the court noted that "[t]he plaintiffs' attempt to characterize their motion as a motion to "enforce' is unavailing. The court will certainly enforce the Stipulation, including the terms included in Paragraph 9.7."

Appellants filed a notice of appeal on November 3, 1995.[5] On November 28, 1995, appellees

---

[5]"Unsure of the outcome of this appeal as to whether the district court possessed jurisdiction to enforce the Stipulation," Appellants' Br. at 4 n.5, the warrant holders filed a separate lawsuit against Coram and its officers in the Northern District of Georgia on November 21, 1995, asserting claims for violations of (1) section 10(b) of the Securities Exchange Act of 1934 (the 1934 Act), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5;  (2) section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a);  (3) O.C.G.A. § 10-5-12(a)(2) (unlawful securities practices);  (4) O.C.G.A. § 51-6-4 (fraud by silence);  and (5) the implied covenant of good faith and fair dealing. In February 1997, the district court dismissed the action pursuant to Federal Rule of Civil Procedure 12(b)(6). According to the court, the warrant holders' claims "essentially involve[d] fraud in the inducement of the Stipulation." Hall v. Coram Healthcare Corp., Civ. Action No. 1:95-cv-2994-WBH, slip op. at 9 n.6 (N.D.Ga. Feb. 13, 1997). After reciting paragraph 10.7 of the stipulation, the court stated that

[u]nder Georgia state law, merger clauses are enforceable and may prevent a party

filed a motion to dismiss the appeal for lack of appellate jurisdiction, which this court ordered

carried with the case.

## DISCUSSION

A district court's determination that it lacked subject matter jurisdiction constitutes a

question of law that we review *de novo. Fleming Cos. v. Abbott Lab. (In re Infant Formula Antitrust*

*Litig., MDL 878),* 72 F.3d 842, 842-43 (11th Cir.1995).

The prescriptions of the Supreme Court's unanimous decision in *Kokkonen v. Guardian Life*

*Insurance Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), control this case.

In *Kokkonen,* the parties settled a federal lawsuit based on diversity jurisdiction involving state-law

claims and counterclaims. Pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii), the parties

executed a Stipulation and Order of Dismissal With Prejudice, which the district judge signed.

Subsequently, the parties disagreed about Kokkonen's obligation to return certain files under the

settlement agreement. Guardian Life moved to enforce the agreement, and Kokkonen opposed the

motion, arguing, in part, that the district court lacked subject matter jurisdiction. The Ninth Circuit

ultimately rejected Kokkonen's argument, holding that the district court retained jurisdiction under

its inherent supervisory power. *Kokkonen,* at 376-78, 114 S.Ct. at 1674-75.

---

> from recovering for fraud in the inducement of a contract. If a contract contains a merger or "entire agreement" clause and the injured party seeks damages on the contract rather than rescission, then the clause will prevent recovery by estopping the claimant from asserting reliance on any misrepresentations (or omissions) allegedly made outside of the four corners of the contract.

> *Hall,* slip op. at 9 (footnote omitted). The court applied the Georgia rule to the federal common law context and found that because "plaintiffs show[ed] no statements within the Stipulation by which they were defrauded," their federal securities claims could not survive defendants' motion. *Hall,* slip op. at 10. The court then declined to entertain the warrant holders' supplemental state-law claims. *Hall,* slip op. at 10-11. The warrant holders have appealed the district court's judgment in *Hall* in case number 97-8246, and this court denied their subsequent motion to consolidate that appeal with the instant one.

In reversing, the Supreme Court made clear that "[e]nforcement of [a] settlement agreement ... is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen,* at 378, 114 S.Ct. at 1675-76. In response to Guardian Life's assertion that ancillary jurisdiction supported its position, the Court addressed its precedents concerning the doctrine and concluded that none "has, for purposes of asserting otherwise nonexistent federal jurisdiction, relied upon a relationship so tenuous as the breach of an agreement that produced the dismissal of an earlier federal suit." *Kokkonen,* at 379, 114 S.Ct. at 1676. The Court recognized that it had asserted ancillary jurisdiction in "two separate, though sometimes related," instances: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent, and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen,* at 379-80, 114 S.Ct. at 1676 (citations omitted). The Court found that neither instance matched the circumstances before it. With regard to the second, which is pertinent to this case, the Court stated:

> We think ... that the power asked for here is quite remote from what courts require in order to perform their functions.... [T]he only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement. The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction" over the settlement agreement) or by incorporating the terms of the settlement agreement in the order. In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Kokkonen,* at 380-81, 114 S.Ct. at 1677.

We believe that the district court properly determined that it lacked jurisdiction to entertain appellants' motion. In our view, appellants' misdenominated "motion to enforce" seeks a modification of the settlement agreement because it requests compensation pursuant to an adjusted exercise price for the warrants that differs from the one generated by the formula in the stipulation.

As the district court correctly held, it did not retain jurisdiction, pursuant to paragraph 9.7 of the stipulation, over a party's attempted modification of the settlement. Accordingly, the court had no authority to exercise ancillary jurisdiction over appellants' motion. Because appellants have not urged that any other provision of law enabled the district court to exercise jurisdiction, we affirm the district court's judgment .[6]

AFFIRMED.[7]

ANDERSON, Circuit Judge, dissenting:

I respectfully disagree with the district court's, and the majority's, characterization of the appellants' motion as one to *modify*. I agree with appellants that their motion is properly construed as one to *enforce* the settlement agreement. The agreement specified that the price of appellants' warrants would be adjusted depending upon the price of Coram stock at a specified future date, which turned out to be June 5-9, 1995, and June 12-16, 1995 (the measuring period). Part and parcel of the settlement agreement was the duty of good faith imposed by Georgia law. Appellants alleged, and in the posture of this case we must assume their allegations to be true, that defendants at that relevant early June time knew certain facts which meant that the price of Coram stock was grossly inflated as of the crucial June 5-9 and June 12-16, 1995, measuring period. Assuming appellants' allegations to be true, as we must, defendants would have had a duty to disclose such information to the public, and the price of Coram stock would have fallen dramatically during the measuring period, rather than later in August when the information was actually disclosed. More significantly, the settlement agreement as supplemented by the Georgia law duty of good faith required disclosure

---

[6]At oral argument, appellants' counsel expressly disavowed that the motion to enforce was one arising under Federal Rule of Civil Procedure 60(b).

[7]Appellees' motion to dismiss this action for want of appellate jurisdiction is denied.

of such information to the appellants; and the duty of good faith was breached by defendants when they concealed such information for the purpose of artificially inflating the price of the stock during the measuring period. In other words, the defendants breached the settlement agreement *as written*, including the duty of good faith which was part and parcel thereof. Respectfully, I disagree with the conclusion of the district court, and the majority, that appellants sought to *modify* the settlement agreement, rather than to *enforce* same.

Having established that appellants' effort is to *enforce* the settlement agreement, I conclude that the district court had jurisdiction. The district court expressly retained "continuing jurisdiction over...(e) all parties hereto...[for] the purpose of enforcing" the settlement agreement. District Court's May 19, 1995, Final Judgment and Order of Dismissal at 8, ¶12. In *Kokkonen v. Guardian Life Ins. Co of America,* 511 U.S. 375, 380-82, 114 S.Ct. 1673, 1677, 128 L.Ed.2d 391 (1994), the Supreme Court held on the facts there that a district court did not have jurisdiction to enforce a settlement agreement. However, the Supreme Court expressly recognized that the district court would have had jurisdiction if it had retained jurisdiction to enforce the agreement:

> The situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal—either by separate provision (such as a provision "retaining jurisdiction over the settlement agreement").... In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist.

*Id*. at 381, 114 S.Ct. at 1677.

Accordingly, I dissent.