In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-1952

RANDALL S. GOULDING, personally
and as trustee of The Goulding Trust,

*Plaintiff-Appellant,*

*v.*

GLOBAL MEDICAL PRODUCTS HOLDINGS,
INC., formerly known as 37Point9,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 8727—**Sidney I. Schenkier**, *Magistrate Judge.*

---

ARGUED DECEMBER 3, 2004—DECIDED JANUARY 4, 2005

---

Before FLAUM, *Chief Judge*, and EASTERBROOK and
WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* This suit has dragged on
despite being settled. A magistrate judge (presiding by con-
sent under 28 U.S.C. §636) brokered the settlement in July
2003. Defendant (which we call 37Point9, its name at the
time) was to pay $45,000 in two installments, after which
the suit was to be dismissed; it was free to tender stock in

lieu of cash, and plaintiff (which we call "the Trust") was free to reject the shares and stand on its entitlement to money. If 37Point9 did not perform on schedule, the Trust was entitled to resume the litigation.

The first tender was of stock, which the Trust sold for a net of $22,388. The second tender also was of stock, which the Trust rejected as not worth enough. Another tender of the same certificates was made and again refused. Goulding asserted that 37Point9 needed to adopt a corporate resolution to allow its sale. Instead of returning to court, as the settlement contemplated (37Point9 failed to pay cash after the Trust rejected the stock), the Trust reopened discussions—but this time outside of the magistrate judge's earshot. The Trust contends that an oral agreement was reached in January 2004 calling for payment in 9.5 million tradeable shares of 37Point9. (At the time, 37Point9 stock was worth scarcely more than the paper the shares were printed on; 9.5 million shares had a market price of $22,500.) The Trust agreed to accept market risk of a price shortfall and reap the benefit of any appreciation. Another tender (the same certificates had been sent to the Trust twice before) was made in January 2004; for a third time the Trust returned the shares, deeming them not eligible for public sale under the federal securities laws. Soon the price of 37Point9's stock rose 25-fold in over-the-counter trading. The Trust then demanded back the same certificates it had thrice rejected. Instead 37Point9 sent cash. Next the Trust turned to the magistrate judge, asking for specific performance of the January 2004 agreement. The court concluded that a novation had not been effected. It rejected as not credible the testimony of trustee Randall Goulding and added that, even if Goulding were to be believed, the parties had not agreed on all material terms. The magistrate judge stated that, by adding interest to its belated cash payment, 37Point9 would fulfil its obligations under the July 2003 settlement. After 37Point9 ponied up the interest, the district court dismissed the complaint.

Jurisdictional problems dog both the claim and the appeal. We start with the latter. The magistrate judge entered two pertinent orders: the first concluded that 37Point9's cash payment satisfied the July 2003 settlement and would support dismissal of the Trust's complaint if 37Point9 added interest; the second observed that interest had been paid and actually dismissed the complaint. Inexplicably, the Trust appealed from the first but not the second, although the second order is the final decision. Defendant asks us to dismiss the appeal on the ground that the Trust's notice of appeal did not identify the final decision. See Fed. R. App. P. 3(c)(1)(B). Inexplicably, the Trust ignored this argument in its briefs. As it happens, however, 37Point9 is wrong on this subject: a notice of appeal identifying an interlocutory decision but filed after final judgment has been entered does present for appellate review the specified interlocutory decision, though nothing else. See *Foman v. Davis*, 371 U.S. 178 (1962); *Chaka v. Lane*, 894 F.2d 923 (7th Cir. 1990).

The other jurisdictional problem, which *both* sides missed, is more substantial. Disputes about settlement contracts must be resolved in state court, unless they independently satisfy the requirements of federal jurisdiction. See *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994); *Peacock v. Thomas*, 516 U.S. 349 (1996). The Trust's original claim met the amount-in-controversy requirement of the diversity jurisdiction. 28 U.S.C. §1332(a). The supposed novation of January 2004 does not; that bargain (if the parties reached one) replaces the chose in action with an entitlement to stock worth $22,500, less the costs (including the time value of money) required to make the shares marketable. See *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1078 (7th Cir. 1986). That the stock rose rather than fell afterward does not change the stakes for jurisdictional purposes. If the Trust wanted to invest in 37Point9 stock, it was free to accept cash and purchase shares in the open market. It can't use litigation to get the potential for appreciation while avoiding all risk of loss.

*Kokkonen* adds that the court's ancillary jurisdiction includes a settlement that the court has either entered as a judgment or reserved authority to enforce. That covers the July 2003 settlement, even though it was for $45,000. But the supposed January 2004 bargain was reached outside the court's auspices, was not presented to or approved by the magistrate judge, and therefore cannot be enforced under the supplemental jurisdiction. See *Bender v. Allegra*, 130 F.3d 990 (11th Cir. 1997); cf. *Ford v. Neese*, 119 F.3d 560, 562 (7th Cir. 1997). Nor can the Trust take advantage of the possibility that, by delaying its protest until the price of the shares exceeded $75,000, and then demanding specific performance so that it could sell immediately and realize a locked-in gain, the jurisdictional amount could be satisfied. Although the supposed bargain was for specified certificates, the Trust no longer wants these; it demands that 37Point9 issue new certificates, which it plans to trade a year hence using the SEC's Rule 144. (Put to one side that this demand would require 37Point9 to violate the Securities Act of 1933, because §4(1), the private-placement exemption from registration, 15 U.S.C. §77d(1), is not available when the issuer knows that the buyer plans to resell in public markets.) Stock goes up and down; the best estimate of stock's future value is its value at the time of the transaction—here, $22,500 less expenses.

There remains the possibility that in January 2004 the parties jointly rescinded the July 2003 settlement, leaving nothing for the magistrate judge to implement. Because dismissal of the Trust's suit was contingent on 37Point9's performance of its obligations under the agreement, this would imply that the Trust has an entitlement to continue with the litigation. But that it not what the Trust wants, nor did the Trust appeal from the order of dismissal. Its decision to appeal from an interlocutory order, rather than the dismissal, limits the issues open to decision in this court. The Trust seeks to hold onto the money and obtain appreci-

ated stock to boot. That's a remedy the district court cannot provide. The Trust has the benefit of the settlement approved by the court; given *Kokkonen*, that is the limit of federal judicial authority. And given the judgment dismissing the complaint because the July 2003 agreement had been fulfilled, the law of preclusion (res judicata) brings the parties' dispute to an end; Goulding should not try to prolong the agony by suing on the supposed novation in state court.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*